## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN R. HANTZ, MICHAEL REID,               :
MICHAEL LACOMBE, MARK                      :
DROUILLARD, and ORISON CHAFFEE,            :
<u>individually</u> and <u>derivatively</u> in their    :
capacity as representative shareholders of :
Transit Group, Inc.,                       :
                                           :
    Plaintiffs,                          :
                                           :          CIVIL ACTION FILE
vs.                                        :
                                           :          NO. 1:05-CV-1012-JOF
                                           :
PHILLIP BELYEW, T. WAYNE DAVIS,            :
DEREK E. DEWAN, FORD G. PEARSON,           :
GENERAL ELECTRIC COMPANY,                  :
GENERAL ELECTRIC CAPITAL                   :
CORPORATION,                               :
                                           :
    Defendants,                          :
                                           :
vs.                                        :
                                           :
PRIORITY AMERICA, INC., F/K/A              :
TRANSIT GROUP, INC.,                       :
                                           :
    Nominal Defendant.                   :
_____        :

## PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

NOW COME Plaintiffs John R. Hantz, Michael Reid, Michael Lacombe,

Mark Drouillard and Orison Chaffee (collectively referred to herein as "Plaintiffs")

and file this Response to the Motions to Dismiss filed on behalf of Defendants

Wayne Davis, Ford G. Pearson, General Electric Company, General Electric Capital Corporation (hereafter "GE") and Nominal Defendant Priority America, Inc. (f/k/a Transit Group, Inc.) (hereafter "Transit") (collectively referred to as "Defendants").[1]

## I.     INTRODUCTION

Plaintiffs brought suit against Defendants asserting derivative and individual rights stemming from the reorganization of Defendant Transit that occurred between April 19, 2001 and December 28, 2001. (Comp. ¶¶ 43-53).  Ignoring the reorganization plan offered by the Plaintiffs, Defendants instead implemented a plan proffered by Defendant GE that ultimately failed to address the underlying financial problems of Defendant Transit and destroyed the interests of the Plaintiffs as shareholders.  Defendants' malfeasance ultimately resulted in Transit filing Chapter 11 bankruptcy protection on December 28, 2001. (Comp. ¶ 53).

Defendants move to dismiss Plaintiffs' Complaint on a number of separate grounds, including:

1.     Alleged lack of standing because Plaintiffs are no longer shareholders;

---

[1] Defendants filed two separate Motions to Dismiss, one on behalf of Defendants Davis, Pearson and Transit, and one on behalf of Defendant GE.  Because the arguments presented in both motions substantially overlap, Plaintiffs will respond to both motions in this pleading.  In addition, Defendants Belyew and Dewan have not yet been served and therefore, no motion to dismiss has been filed on their behalf.

2.     Alleged failure to satisfy certain other conditions precedent to bringing shareholder derivative claims, including the making of a pre-suit demand;

3.     Alleged failure to demonstrate proximate cause between Plaintiff's injuries and Defendants' actions;

4.     Alleged extinguishment or transfer of Plaintiffs' claims by way of the bankruptcy proceedings; and

5.     Alleged release of Defendants Transit and GE during the bankruptcy proceeding.

In their respective Motions, Defendants fail to demonstrate as a matter of law that Plaintiffs' Complaint does not meet the basic notice pleading requirements that allow this matter to proceed to litigation.[2]  Because Defendants' motions have failed to meet the requirements for dismissal of this action under Federal Rule of Civil Procedure 12 (b) (6), their respective motions to dismiss should be denied.

## II.   <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); <u>see</u> <u>also</u> <u>Conley v. Gibson</u>, 355

---

[2] Plaintiffs initially failed to verify the Complaint and inadvertently included a non-diverse party. These curable defects were solved by way of amendment when Plaintiffs filed their Amended Complaint on July 5, 2005.

U.S. 41, 47, 78 S.Ct. 99, 102, (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev., 711 F.2d 989, 994-95 (11th Cir. 1983). A court should dismiss a complaint only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. Conley, 355 U.S. at 45-46, 78 S.Ct. at 101-02. Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082, 106 S.Ct. 851 (1986). Under notice pleading, a plaintiff need only give the defendant fair notice of the claim asserted and the grounds upon which it rests. Id.

Defendants' asserted reasons advanced in support of their Motions to Dismiss can be grouped into three broad categories: (A) the alleged failure to satisfy certain conditions precedent to bringing a derivative action, including the requirement of being a Transit shareholder and the requirement of making a pre-suit demand on the Transit board of directors; (B) the alleged lack of standing to bring suit because of the bankruptcy proceeding; and (C) the alleged failure to demonstrate proximate cause, special injury or to otherwise plead Plaintiffs' fraud

claims with the requisite specificity.   These arguments will be addressed in seriatim below.

**A.**   **Plaintiffs Have Standing To Bring A Derivative Action Against Defendants Despite The Entry Of The Bankruptcy Order.**

      1.   The Continuous Ownership Rule Does Not Apply To Plaintiffs.

Defendants aver that Plaintiffs are barred from prosecuting their claims because they fail to satisfy the continuous ownership rule which requires that plaintiffs bringing derivative actions be shareholders in the defendant corporation at the time suit is brought.  In making this argument, Defendants rely on Schilling v. Belcher, 582 F.2d 995 (5th Cir.   1978), for the proposition "that in order to pursue a shareholder derivative claim, plaintiffs must be shareholders when they bring the action, and must remain shareholders during the pendency of litigation." (Defendant GE's Memorandum in Support of Motion to Dismiss p. 8).

The Schilling plaintiff, a substantial shareholder in the defendant company, brought suit on multiple grounds.   Schilling, 582 F.2d at 996.  While the case was being appealed, the plaintiff sold all of his stock in the company.  Id.   The defendant-corporation subsequently moved to dismiss the complaint on the ground that, by selling all of his stock in the defendant, the plaintiff had forfeited his derivative standing.  Id.  In granting the motion to dismiss, the court held that "a shareholder who sells his stock pending appeal of a favorable judgment in a stockholder's derivative suit against the corporation, loses standing to further

prosecute or defend the case, except to the extent that the judgment runs personally in his favor. Id.

Schilling is easily distinguishable from this case on the ground that the plaintiff in Schilling voluntarily disposed of his stock during litigation. In this case, Plaintiffs' stock ownership was terminated due to no action or fault of the Plaintiffs. Rather, the Complaint alleges that Plaintiffs' stock was forfeited due to fraudulent and self-serving conduct which constituted a breach of Defendants' fiduciary duty. (Comp. ¶¶ 51-55).

The Eleventh Circuit has yet to address the issue of derivative standing in the context of plaintiffs who have involuntarily lost ownership of stock in a corporation due to bad-faith transactions. However, persuasive authority from other Circuits strongly argues in favor of Plaintiffs being able to continue their litigation. Courts in at least six states, including New York, Delaware, Oklahoma, California, Indiana and Oregon, recognize an exception to the continuous ownership rule in cases where a plaintiff's loss of stock ownership was involuntary due to fraudulent behavior on the part of management.

The public policy negating the need for continuity of shareholder status as set forth in these cases is likewise necessary to protect Plaintiffs in this case where the Complaint sets forth similar allegations of fraud and malfeasance by the Defendants. For instance, California courts have held that allowing a defendant's

illegal activities to have the effect of destroying a derivative action "would be tantamount to giving free reign to deliberate corporate pilfering by management and immunizing those responsible from liability by virtue of the merger which they arranged." Gaillard v. Natomas, Co., 173  Cal. App.3d  410 (1985).  Similarly, in Eastwood v. Nat'l Bank of Commerce, 673 F.Supp. 1068, 1077 (W.D. Okl. 1987), the court noted that allowing shareholder standing in such instances is keeping in line with good public policy, holding:

> [c]onferring equitable shareholder status upon a shareholder
> who is, in the same suit in which he asserts derivative claims,
> challenging the very transaction by which he allegedly lost his
> shareholder status, which transaction is alleged to have been
> induced by the same conduct which caused the loss to the
> corporation for which the derivative claim is asserted, does not
> derogate the policy said to be served by the shareholder status
> requirements.

Eastwood, at 1077.

In Arnett v. Gerber Scientific, 566 F.Supp. 1270, 1273 (S.D.N.Y. 1983), the court reasoned that, "[a]s to common sense it is obvious that to deny plaintiff-shareholders standing in such cases would insulate defendants from liability whenever defendants can consummate a short-form merger without plaintiffs' knowledge and without any opportunity for plaintiffs to obtain an injunction against it." Arnett, at 1273.

Although the above-cited cases deal with standing in the context of mergers and not a bankruptcy, the present case is analogous to the above-cited cases in the

most important aspect -- the loss of shareholder status was involuntary and due to Defendants' illegal and fraudulent conduct. Plaintiffs here allege that the loss of shareholder status was due to a bankruptcy directly caused by the fraud and self-dealing perpetrated by Defendants. (Comp. ¶¶ 51-55). To disallow shareholder standing in such a case would violate the principles of equity and would give way to the type of free reign for deliberate corporate pilfering and immunization of management discussed in Gaillard.[3]

### 2.    Plaintiffs Complied With All Pre-Suit Requirements.

The Defendants next argue that Plaintiffs' alleged failure to make a pre-suit demand on the Transit board of directors prior to initiating litigation bars their action against Defendants. As an initial matter, Plaintiffs note that they have pled

---

[3] See also e.g., Lewis v. Ward, 852 A.2d 896, 902 (Del. 2004) (recognizing a fraud exception to the continuous ownership rule where a shareholder loses standing due to a merger, when the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of standing to bring a derivative action); In re General instrument Corp., 23 F.Supp.2d 867, 872 (N.D. Ill. 1998) (a former shareholder has standing to bring a derivative action when the alleged wrong that the plaintiff is suing on divests the plaintiff of ownership in the derivative corporation); Noakes v. Schoenborn, 841 P.2d 682 (Ore. App. 1992)(a plaintiff in a derivative action must continue to own stock in the defendant-corporation at the time of filing suit unless plaintiff's failure to own the stock is a result of corporate action to which plaintiff did not acquiesce); Gabhart v. Gabhart, 370 N.E.2d 345, 358 (Ind. 1977)("A Court of Equity (derivative suits are equity actions) may grant relief to a former shareholder of a merged corporation whose equity was adversely affected by the fraudulent act of an officer of director and whose means of redress otherwise would be cut off by merger, if there is no shareholder of the surviving corporation eligible to maintain a derivative action for such wrong and said shareholder had no prior opportunity for redress by derivative action against either the merged or the surviving corporation.").

in the Complaint that a pre-suit written demand was filed on the Defendants.[4]
(Comp. ¶ 57).    At a minimum, whether Plaintiffs' written demand satisfied the
requirement of having delivered a written demand to Transit prior to initiating suit
is not a proper issue for resolution on a motion to dismiss as evidence from outside
the pleadings must be interpreted in making any determination as to whether the
demand requirement was satisfied.

Moreover, under well settled Florida law, where a demand upon directors of
a corporation would be futile, such a demand is not required as a prerequisite to
bringing a derivative action.[5]  McDonough v. Americom International Corporation,
151 F.R.D. 140, 142 (M.D. Fla. 1993).    This concept was explored in Conlee
Construction Co. v. Cay Construction Co., 221 So.2d 792, 796 (Fla. 4th DCA
1969), in which the Court held that a "demand on the directors to bring the action,
a condition precedent to suit, is excusable where the demand obviously would be
unavailing."  This exception to the requirement of a pre-suit demand harmonizes
Florida law with the exceptions in federal case law -- where a director is self-
dealing or a board is so dominated by defendant directors that a demand would be

---

[4] Defendants dispute that the written demand sent by Plaintiffs satisfies the requirement that a
pre-suit demand be filed.  Defendants argue that the written demand filed on behalf of Plaintiffs
in April of 2002 is more in the nature of a "class action strike suit" demand.  Whether the April
2002 letter sent by Plaintiffs qualifies as a sufficient demand is irrelevant for purposes of
Defendants' Motions to Dismiss.  As a factual dispute involving matters extraneous to the
Complaint, Defendants contentions regarding the pre-suit demand are not appropriate for
resolution under Rule 12(b)(6).

[5] The law of the state of incorporation is determinative of any demand requirement.  See, Kamen
v. Kemper Financial Services, Inc., 500 U.S. 90, 111 S.Ct. 1711 (1991).

futile, no demand need be made.  See, Heit v. Baird, 567 F.2d 1157 (1st Cir. 1977);

Cramer v. General Tel. & Elec. Corp., 582 F.2d 259, 276 (3d Cir. 1978), cert.

denied 439 U.S. 1129, 99 S.Ct. 1048 (1979).

The Complaint alleges egregious conduct on the part of Defendants,

including the individual Defendants on Transit's board of directors. (Comp. ¶¶ 51-

55).   The Complaint alleges that Transit's board of directors conspired with

Defendant GE to adopt a restructuring plan that would lead the company into

bankruptcy yet would work to enhance the respective equity interests of

Defendants in the Company. (Comp. ¶ 52).   The Complaint further alleges that

the scheme concocted by Defendants unlawfully released personal guarantees of

certain Transit board members (Comp. ¶ 53), and allowed other Defendants to

improperly negotiate preferred stock with anti-dilution provisions (Comp. ¶ 54).

In short, the Complaint allegations refer to the type of egregious misconduct

which will excuse a demand upon the board of directors for the relief sought in this

action.   Viewing the Complaint in the light most favorable to the Plaintiffs,

dismissal for the alleged failure to make an adequate demand on Transit's Board of

Directors is not proper.

**B.**     **Plaintiffs' Claims Are Not Barred By The Bankruptcy Proceeding.**

Defendants make several arguments that the bankruptcy proceedings

preclude Plaintiffs' derivative action.  The gist of these arguments is that Plaintiffs'

right to proceed with their derivative actions were extinguished by the bankruptcy as a matter of law. As discussed below, Defendants' arguments are overreaching and without merit.

### 1.    The Releases Signed By GE And Transit Do Not Bar This Action.

Defendants argue that claims against Defendants GE and Transit are barred by the doctrine of release. Florida law holds that releases are governed by the laws of contract. Allapattah Services, Inc. v. Exxon Corp., 188 F.R.D. 667, 682 (S.D. Fla. 1999). It is well settled under Florida law that a party may not exonerate himself of an intentional tort via contract. Zuckerman-Vernor Corp. v. Rosen, 361 So.2d 804 (Fla. 4th DCA 1978); Fuentes v. Owen, 310 So.2d 458 (Fla. 3d DCA 1975). Furthermore, a party cannot contract against liability for his own fraud in order to exempt himself from liability for an intentional tort.[6] Zuckerman, 361 So.2d at 805.

Plaintiffs allege in the Complaint that Defendants GE and Transit have engaged in a breach of fiduciary duty as relates to the obligations owed to Plaintiffs and other similarly situated minority shareholders. (Comp. ¶¶ 51-55, 59-63, 67-77). These tort allegations are the types of claims which Florida law specifically precludes parties from contracting out of by way of a release. Accordingly, Defendants' argument that Plaintiffs lack standing to sue Defendants

---

[6] An action for breach of fiduciary duty is an intentional tort. Halkey-Roberts Corp. v. Mackal, 641 So.2d 445, 446 (Fla.App. 1994).

GE and Transit because of the fact that those parties entered releases during the bankruptcy proceedings carries no weight.

   2.   The Bankruptcy Proceedings Do Not Preclude Plaintiffs' Derivative Action.

Defendants also assert that Plaintiffs' derivative claims fail because they were transferred to the bankruptcy estate and, as a result, Plaintiffs were divested of their derivative claims as a matter of bankruptcy laws.   Stated differently, Defendants believe that any claims against Transit's former directors are the property of the Transit Creditor's Trust.   In making this argument, Defendants assert that Plaintiffs' claims falls within the definition of Avoidance Action and Specified Cause of Action set forth in Debtors' Amended Plan of Reorganization which was then transferred to Transit's Creditor's Trust.

However, the very definition of "Avoidance Action" contained in the Debtor's Amended Plan of Reorganization excludes "any cause of action as to the Released Parties or Released Claims."   By Defendant GE's own assertion, Plaintiffs' cause of action falls within the definition of "Released Claims."   The fact that Defendant Transit's release of  GE is invalid under Florida law does not change the fact that the intent of the parties as evidenced by the written agreement excludes Released Claims from the definition of Avoidance Action.   Accordingly, Plaintiffs' claims have not been transferred to the bankruptcy estate as an Avoidance Action.

Defendants further argue that Plaintiffs were required to make a demand on the bankruptcy trustee in order to initiate a derivative suit.  General Development Corp. v. Skolnick, 179 B.R. 335, 339 (S.D. Fla. 1995) (as a general proposition, plaintiffs bringing derivative actions subsequent to corporation's filing of bankruptcy must make a demand on the bankruptcy trustee in order to initiate a derivative suit).  However, a plaintiff may bring a derivative suit without demand upon the bankruptcy trustee if plaintiff shows that such a demand would have been futile.  Kemper v. American Broadcasting Companies, Inc., 365 F.Supp. 1272, 1274 (S.D. Oh. 1973).

Florida law recognizes the right of dissenting stockholders to "sue derivatively to enforce the rights of the corporation without demand if the directors, by reason of hostile interest or guilty participation in the wrongs complained of, cannot be expected to institute suit, or if they do, it is apparent they will not be the proper parties to conduct the litigation." Orlando Orange Groves Co. v. Hale, 107 Fla. 304, 316,144 So. 674 (1932).  Furthermore, the United States Supreme Court reasoned that "suits to enforce a corporate claim are not abated when the corporation is adjudged bankrupt or when a receiver is appointed" when derivative claims may "be lost to the estate through operation of statute of limitations, if the trustee or receiver were required to start anew."  Meyer v. Fleming, 327 U.S. 161, 167 (1946).  In this case, Defendants' hostile actions taken

13

towards Plaintiffs and participation in the wrong complained of by Plaintiffs in the Complaint obviates the need for Plaintiffs to make a demand on the corporation or bankruptcy trustee.

## C.   **Plaintiffs' Complaint Pleads Fraud With The Requisite Particularity.**

### 1.   Plaintiffs' Derivative Fraud Claims.

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.Pro. 9(b).  A fraud claim meets the requirements of Federal Rule of Civil Procedure Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral presentations, who made the statements, the time and place of the statements, the contents of the statements or manner in which they misled the plaintiff, and what the defendants gained as a consequence.  Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997).  To avoid dismissal on a Rule 12(b)(6) motion, "[t]he plaintiff's complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  Cooper v. Blue Cross and Blue Shield of Florida, Inc., 19 F.3d 562, 568 (11th Cir. 1994).

The stricter pleading requirements of "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to

relief." Brooks, 116 F.3d at 1371.  In applying these rules to the allegations contained in Plaintiffs' Complaint, Defendants' Motions to Dismiss should be denied.

By pleading that Defendant Transit entered into an agreement with Defendant GE to conspire with and defraud Plaintiffs of their shareholder rights, Plaintiffs have sufficiently demonstrated reliance upon fraudulent representation to withstand a motion to dismiss.  In Friedlander v. Nims, 755 F.2d 810 (11th Cir. 1985), the Eleventh Circuit considered the question of pleading fraud with particularity in a securities law context.  The Court stated that Rule 9(b) must not be read to abrogate the notice pleading requirements of Rule 8.  Therefore, a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading.  Friedlander, 755 F.2d at 810.  The court noted that the "clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.  Friedlander, 755 F.2d at 810.  In the pleading before this Court, Plaintiffs have stated the particular circumstance that Defendants Transit and GE conspired to improve their position vis-à-vis the minority shareholders.  (Comp. ¶¶ 51-55).

"Allegations of fraud in the securities context should be stated with particularity because generally the information giving rise to the action is available

before commencement of the suit." <u>Viscomi v. Paine, Webber, Jackson & Curtis,</u>
596 F.Supp. 1537, 1539 (S.D. Fla. 1984), <u>quoting</u> <u>Benoay v. Decker,</u> 517 F.Supp.
490, 492 (E.D.Mich.1981).   However, where such information is not available
before commencement, this requirement should be relaxed.   In <u>Benoay</u>, the court
found insufficient a complaint in which the plaintiff only tied the defendant to
alleged acts as a co-conspirator, with no further detail.   In contrast, Plaintiffs in this
case have pointed to specific actions by the Defendants Transit and GE which were
designed to dilute and destroy the equity of the minority shareholders, including
the Plaintiffs.

Defendants' argument that Plaintiffs need to provide intricate details of the
fraud perpetrated by Defendants is not supported by the law.   Rather, for purposes
of surviving a Rule 12(b)(6) motion, it is sufficient that Plaintiffs allege that
Defendants Transit and GE conspired to improve their position at the expense of
Plaintiffs.   In light of the broad latitude for discovery provided by the Federal
Rules of Civil Procedure, Plaintiffs have pled alleged fraud and misrepresentation
as to all counts with sufficient particularity to survive a Rule 12(b)(6) motion to
dismiss.

        2.     <u>Plaintiffs Allege Special Injury With Respect To Direct Fraud Claims.</u>

Generally, an individual shareholder does not have standing to bring a direct
claim for breach of fiduciary duty against a corporate officer or director.   <u>Holland</u>

v. Holland Heating & Air Conditioning, Inc., 208 Ga.App. 794, 797, 432 S.E.2d 238 (1993).  Usually, a breach of fiduciary duty claim must be brought derivatively on behalf of all of the shareholders because the injury alleged is to the corporation, not the individual shareholder. Thomas v. Dickson, 250 Ga. 772, 774, 301 S.E.2d 49 (1983).  However, a shareholder can bring a direct claim for breach of fiduciary duty if he alleges a special injury suffered by him resulting from the breach of fiduciary duty.  Holland, 432 S.E.2d at 242.  "[T]o set out an individual action, the plaintiff must allege ... an injury which is separate and distinct from that suffered by other shareholders..." Holland, 432 S.E.2d at 242.

The special injury to Plaintiffs stems from Defendants' active solicitation of Plaintiffs to participate in the attempted restructuring of the Company.  (Comp. ¶¶ 40-46, 79-90).  By seeking out Plaintiffs to participate in the restructuring process, Defendants made certain promises to Plaintiffs that they did not make to the general shareholders of the Company.  (Comp. ¶ 41).  Likewise, Defendants made certain untrue statements to Plaintiffs that were not made to the general class of shareholders.  (Comp. ¶¶ 85-89).  The false representations made by Defendants were intended to, and in did in fact, cause Plaintiffs to rely upon the Defendants' representations to their detriment.  (Comp. ¶¶ 89, 90).

As a result of these representations, Plaintiffs were placed in a disadvantageous position vis-à-vis the general shareholders in that based on

Defendants' representations, Plaintiffs failed to take actions that might have mitigated their losses, such as selling their respective shares.   Unlike the Plaintiffs, the general shareholders were not enticed to remain Transit shareholders by virtue of untrue statements made directly to them.   As such, Plaintiffs' suffered injuries which were unique to them, in addition to the losses suffered by the shareholders as a class.   At a minimum, factual issues remain that preclude Defendants from having their motions to dismiss granted.

**D.**   **Defendant GE Is Not Entitled To Attorneys' Fees And Expenses.**

Defendant GE argues that under O.C.G.A. § 14-2-746 (2) it should be awarded attorneys' fees and expenses for having to respond to Plaintiffs' Complaint.  Defendant GE stakes its claim to attorneys' fees and expenses based on the alleged  baseless nature of Plaintiffs' derivative claims.  However, because Defendant GE cannot demonstrate that Plaintiffs' derivative claims have been brought on unreasonable grounds, GE  is not entitled to recover the expenses of litigation, including its attorneys' fees.

In the first place, as amply demonstrated above, Plaintiffs' Complaint is not baseless.  Plaintiffs have set forth significant facts and arguments in support of its response to Defendants' Motions to Dismiss, which in and of themselves, suffice to demonstrate that the Complaint allegations are not baseless.   Moreover, the

award of fees under O.C.G.A. § 14-2-746 (2) can be made only after a final order has been entered.  Since the Court has not yet ruled on Defendants' Motions to Dismiss, GE's attempt to obtain fees is not yet ripe.  For this reason as well, the Court should deny Defendant GE's effort to obtain fees and costs.

## III.   CONCLUSION

For the reasons set forth above in this Response, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss.

Submitted this 1st day of September, 2005.

/s/ Bryan Busch
BRYAN E. BUSCH
Georgia Bar No. 006055
MARC A. TAYLOR
Georgia Bar No. 700740

TAYLOR, BUSCH, SLIPAKOFF
& DUMA, LLP
2609 Cumberland Parkway, Suite 105
Atlanta, Georgia 30339
Phone:  770-434-6868
Fax:     770-434-7376

DAVID J. SHEA
Michigan Bar No. (P41399)
MILLER SHEA, P.C.
950 W. University Dr., Suite 300
Rochester, MI 48307
Phone:  (248) 841-2200
Fax:     (248) 354-0440

19

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| John R. Hantz, et al. | ) |
| | ) |
|        Plaintiffs, | ) |
| | ) Civil Action No. 1:05-CV-1012- |
| vs. | ) JOF |
| | ) |
| Phillip Belyew, et. Al. | ) |
| | ) |
|        Defendants. | ) |
| | ) |

## **CERTIFICATE OF COMPLIANCE OF N.D. GA. L.R. 5.1B**

Counsel certifies that this pleading was prepared in Times New Roman 14 point font.

This 1st day of September, 2005

/s/ Bryan E. Busch
BRYAN E. BUSCH
Georgia Bar No. 006055
MARC A. TAYLOR
Georgia Bar No. 700740
Attorneys for Plaintiffs

TAYLOR, BUSCH, SLIPAKOFF & DUMA, LLP
2690 Cumberland Parkway, SE
Suite 105
Atlanta, Georgia 30339
Phone: 770-434-6868
Fax:  770-434-7376

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS has been filed with the U.S. District Court and a copy of this pleading has been served upon the following persons by United States Mail as follows:

> Dan F. Laney, Esq.
> ROGERS & HARDIN, LLP
> 2700 International Tower
> Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, Georgia 30303-1601
>
> Nisbet S. Kendricks, III, Esq.
> WOMBLE CARLYLE SANDRIDGE & RICE, LLC
> One Atlantic Center
> 1201 West Peachtree Street
> Suite 3500
> Atlanta, GA.  30309

This 1st day of September, 2005.

> /s/ Bryan E. Busch
> BRYAN E. BUSCH
> Georgia Bar No. 006055