IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN R. HANTZ, et al.,            :
                                  :
            Plaintiffs,           :
                                  :
      v.                          :     CIVIL ACTION NO.
                                  :     1:05-CV-1012-JOF
PHILLIP BELYEW, et al.,           :
                                  :
            Defendants.           :

## OPINION AND ORDER

This matter is before the court on Defendants' motion to dismiss [7-1]; Defendants'
motion to dismiss [8-1]; Defendants' motion to dismiss the amended complaint [16-1];
Defendants' first motion to dismiss the amended complaint [17-1]; and Plaintiffs' motion for
oral argument [21-1].

**I.     Background**

   **A.     Procedural History**

   Plaintiffs, John R. Hantz, Michael Reid, Michael Lacombe, and Mark Drouillard, filed
suit against Defendants, Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson,
General Electric Company, General Electric Capital Corporation, and Transit Group, Inc., on
April, 18, 2005, alleging derivative actions for breach of fiduciary duty, and conspiracy to
breach fiduciary duty, as well as a direct action for fraud.  Plaintiffs also seek attorney's fees

pursuant to O.C.G.A. §§ 13-6-11 and 14-2-746(1). Defendants, Philip Belyew, T. Wayne David, Derek Dewan, and Ford Pearson, were on Transit's Board of Directors during the relevant time period. Plaintiffs are former shareholders of Transit who were part of a financing group known as the Hantz Group.

**B.    Chronology To Transit Bankruptcy**

From July 1997 through November 1999, Transit attempted to become a national trucking company. *See* Amended Cmplt., ¶ 21. During this time period, Transit acquired nineteen different companies. *Id.*, ¶ 22. By 1999, Transit was in need of capital. *Id.*, ¶ 24. GE invested in Transit and received stock and other benefits pursuant to a stock agreement. *Id.* However, by fall 1999, Transit was in a "full-blown fiscal crisis" and on the brink of defaulting on certain debt. *Id.*, ¶ 26. By May 2000, Transit had defaulted on certain loans, and by September 2000, it was unable to meet its payroll. *Id.*, ¶¶ 28-29.

In March 2001, Transit needed between $5 and $7 million of cash. *Id.*, ¶ 39. The Board of Directors actively solicited various groups, including Plaintiffs, for the investment. *Id.*, ¶ 40. On March 27, 2001, the Hantz Group submitted a proposal to the Board of Directors, the details of which are not relevant to the resolution of the instant motions. *Id.*, ¶ 43. Transit's Board rejected the Hantz Group's proposal and instead adopted the financing proposal put forth by GE. *Id.*, ¶ 45. The GE Plan was adopted by the Board of Directors on April 19, 2001. *Id.*, ¶ 46. The financial viability of Transit did not improve, and Transit filed for Chapter 11 bankruptcy on December 28, 2001. *Id.*, ¶ 48.

2

C.      **Key Allegations in Complaint**

Plaintiffs contend that if their plan had been adopted by the Board, Transit "would have maintained [its] viability to the benefit of <u>all</u> of its shareholders." *Id.*, ¶ 49 (emphasis in original). Transit's Board "conspired" with GE to adopt a plan that was to the benefit of GE but the detriment of Transit and its shareholders. *Id.*, ¶ 50. Transit's Board and GE knew that the restructuring plan they adopted would not prevent bankruptcy. *Id.*, ¶ 51. The plan provided for preferential treatment to GE at the expense of Transit and its shareholders. *Id.*, ¶¶ 53-54.

Between April 19, 2001, and May 16, 2001, Transit's Board and the GE Defendants disclosed to Plaintiffs the plan of reorganization offered by GE. *Id.*, ¶ 78. Defendants "made certain promises and untrue statements to Plaintiffs that they did not make to the general shareholders of the Company, including the promise that Plaintiffs would lead the restructuring effort." *Id.* The "false representations made by Defendants were intended to, and in fact did cause Plaintiffs to rely upon the Defendants' representations to their detriment as Plaintiffs expended extensive time and resources devising a restructuring plan" that Transit's Board did not intend to accept. *Id.* "As a result of their representations, Plaintiffs were placed in a disadvantageous position vis-a-vis the general shareholders in that based on Defendants' representations, Plaintiffs failed to take certain actions that would have mitigated their losses, such as selling their respective shares." *Id.* Defendants intentionally misrepresented that GE's restructuring plan was in the best interests of the shareholders. *Id.*, ¶ 84.

3

**D.**     **Contentions**

Both the GE Defendants and the Transit Defendants contend that Plaintiffs' claims should be dismissed because (1) Plaintiffs are not shareholders of Transit, (2) with approval of the Bankruptcy Court, Transit gave GE a complete release of all corporate and bankruptcy claims, (3) Plaintiffs cannot show the actions of any Defendants were the proximate cause of their damages, (4) Plaintiffs' "direct" fraud claim is actually derivative because Plaintiffs did not suffer any special injury, (5) Plaintiffs did not plead fraud with any particularity and thus did not allege detrimental reliance, or a false statement relating to an existing fact or past event, (6) the claims Plaintiffs attempt to assert derivatively were transferred to Transit's bankruptcy estate, (7) Plaintiffs did not make a pre-suit demand on Transit, (8) Plaintiffs' claims were extinguished by the Bankruptcy Court in its November 27, 2002 order, and (9) Plaintiffs were also divested of their fraud-based claims. The GE Defendants also ask that the court award attorney's fees pursuant to O.C.G.A. § 14-2-746(2).[1]

Plaintiffs respond that they do not need to be shareholders to bring this derivative action because they allege that the fraudulent acts of Defendants caused them to lose their shareholder status. Plaintiffs further aver that (1) so long as they allege in the complaint that

_____

[1]Both the GE Defendants and the Transit Defendants filed initial motions to dismiss. Plaintiffs then filed an Amended Complaint and Defendants filed additional motions to dismiss. The court DENIES AS MOOT the initial motions to dismiss, Defendants' motion to dismiss [7-1] and Defendants' motion to dismiss [8-1]. The court analyzes Defendants' second motions to dismiss with respect to Plaintiffs' Amended Complaint.

AO 72A
(Rev.8/82)

they made a demand on the Board, on a motion to dismiss, the court may not look past that allegation to the actual demand letter to determine whether it satisfies the statutory demand requirement, (2) the release of GE that occurred in the bankruptcy proceedings does not bar Plaintiffs' actions against GE because a party may not exonerate himself of an intentional tort via contract, (3) Plaintiffs' claims against Transit's former directors are not the property of the Transit Creditor's Trust, and (4) Plaintiffs suffered a particular fraud injury because as a group of investors whose financing offer was refused by Transit, Transit made certain misrepresentations to them that enticed them to remain shareholders of Transit.[2]

---

[2]The court recognizes that Plaintiffs seek oral argument on Defendants' motions to dismiss.  Upon the court's review of the parties briefs and the applicable law, the court finds it does not require additional explanation from the parties to understand the factual history and law applicable to Plaintiffs' complaint.  Accordingly, the court DENIES Plaintiffs' motion for oral argument [21-1].

AO 72A
(Rev.8/82)

## II.      Discussion

### A.      Derivative Claims

#### 1.      Shareholder Status

In *Schilling v. Belcher*, 582 F.2d 995 (5th Cir. 1978), the court held that under federal law and Florida state law, in order to bring a shareholder derivative suit, a plaintiff must be a shareholder when the action was brought and throughout the course of the litigation. *Id.* at 999-1000;[3] *see also Timko v. Triarsi*, 898 So. 2d 89, 91 (Fla. Dist. Ct. App. 2005) (in addition to statutory requirements, plaintiff in shareholder derivative suit must also "meet the common law requirement of continuous ownership throughout the pendency of the suit"). The *Schilling* court explained that Federal Rule of Civil Procedure 23.1 contains two discrete standing requirements:    (1) "contemporaneous ownership," that is, the plaintiff must have owned stock in the company at the time of the transaction of which he complains, and (2) the plaintiff must be a shareholder of the defendant at the time the suit is brought.    *Id.* at 999 (noting that the second requirement is not explicit in the rule but is implied by the statement in Rule 23.1 that a "shareholder" may file suit to enforce the right of a corporation).

---

[3]This case is in federal court on the basis of diversity of citizenship.   As the *Schilling* court, this court need not address whether federal or Florida law applies to the standing issue because the result under both is the same.   *See also West v. West*, 825 F. Supp. 1033, 1053-54 (N.D. Ga. 1992) (Forrester, J.) (noting split in authority as to whether stockholder standing is substantive or procedural).

6

There is no dispute that Plaintiffs are no longer shareholders of Transit. Transit's common and preferred stock, including Plaintiffs' common stock, were eliminated as part of Transit's reorganization in Chapter 11 proceedings. *See* Transit's Amended Joint Plan of Reorganization, ¶¶ 13 & 14 (noting that all common and preferred stock will be "extinguished and will become null and void" upon the Bankruptcy Court's confirmation of the plan); Order of Bankruptcy Court, dated November 27, 2002 (confirming reorganization plan).[4]

Plaintiffs, however, argue that they fall into an exception to the rule that a plaintiff must be a shareholder in order to bring a derivative action because their loss of stock was "involuntary" and allegedly was caused by Defendants' "conspiracy" to reject Plaintiffs' financing plan and accept GE's plan instead. Plaintiffs, however, cite to a series of district court and state cases concerning individuals who lose their shareholder rights in a merger, the propriety of which they wish to challenge in the derivative action. *See*, *e.g.*, *In re General Instrument Corp.*, 23 F. Supp. 2d 867, 872 (N.D. Ill. 1998); *Eastwood v. National Bank of Commerce*, 673 F. Supp. 1068, 1077 (W.D. Okla. 1987); *Arnett v. Gerber Scientific*, 566 F. Supp. 1270, 1273 (S.D.N.Y. 1983); *Lewis v. Ward*, 852 A.2d 896, 902 (Del. 2004); *Noakes v. Schoenborn*, 841 P.2d 682 (Ore. App. 1992); *Gaillard v. Natomas, Co.*, 173 Cal. App. 3d 410 (1985); *Gabhart v. Gabhart*, 370 N.E.2d 345, 358 (Ind. 1977).

---

[4]The court may consider the orders of the Bankruptcy Court attached to Defendants' motions to dismiss. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

Here, in marked contrast, Plaintiffs lost their shareholder rights in bankruptcy proceedings before a bankruptcy court and in a reorganization plan approved by a bankruptcy judge. Unlike the plaintiffs in the merger cases, Plaintiffs have already had an adversarial forum in which they could challenge Transit's reorganization plan – the bankruptcy proceedings. Furthermore, as the court discusses below, any claims Plaintiffs may wish to bring concerning the actions of Transit's Board of Directors were also processed – and extinguished – through the Bankruptcy Court. This court certainly cannot revisit those decisions. Because Plaintiffs are no longer shareholders in Transit, the court GRANTS Defendants' motions to dismiss Plaintiffs' derivative action claims.

2.    Count III Fraud

The parties dispute the proper manner in which to characterize Plaintiffs' fraud claim under Count III of their complaint. Defendants contend the fraud claim is not a direct claim, but rather another derivative claim that must be dismissed. Plaintiffs claim they have suffered "special injury" and, therefore, their fraud claim is direct.

The court applies state law to determine whether a cause of action is direct or derivative. *See, e.g., 7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d 211, 221 (5th Cir. 1994). Transit is incorporated in the state of Florida and, therefore, Florida law applies. *See* O.C.G.A. § 14-2-747 (derivative actions concerning foreign corporations are governed by the law of the state of incorporation). In *Citizens National Bank v. Peters*, 175 So. 2d 54 (Fla. Dist. Ct. App. 1965), the court discussed how to

8

distinguish a derivative claim from a direct claim. The court first noted that the character of the plaintiff's claim "must be determined from the gravamen of his complaint." *Id.* at 56. The court then noted that the distinction between direct and derivative is an "attempt to convey . . . that a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation." *Id.*; *see also Alario v. Miller*, 354 So. 2d 925, 926 (Fla. Dist. Ct. App. 1978).

In order to determine whether Plaintiffs' fraud count is individual or derivative, it is necessary to review in detail Plaintiffs' fraud allegations. Plaintiffs allege:

> On April 19, 2001 and May 16, 2001, the Defendants, in concert with one another, disclosed to Plaintiffs the plan of reorganization proffered by GE and adopted by the Board of Directors of Transit. Prior to that time during the first quarter of 2001, Defendants had invited Plaintiffs to participate in the restructuring process. In connection with that invitation, Defendants made certain promises and untrue statements to Plaintiffs that they did not make to the general shareholders of the Company, including the promise that Plaintiffs would lead the restructuring effort. The false representations made by Defendants were intended to, and in fact did cause Plaintiffs to rely upon the Defendants' representations to their detriment as Plaintiffs expended extensive time and resources in devising a restructuring plan. Plaintiffs' restructuring plan was presented to the Board of Directors; however, the Board of Directors never had any intention of accepting this plan. As a result of these representations, Plaintiffs were placed in a disadvantageous position vis-a-vis the general shareholders in that based on Defendants' representations, Plaintiffs failed to take actions that would have mitigated their losses, such as selling their respective shares.

Amended Cmplt., ¶ 78.   Plaintiffs further allege that Defendants did not "disclose" that Transit's Board had "conspired with GE to adopt a restructuring plan which was designed to benefit their interest at the expense and *to the detriment of the shareholders*, thereby robbing Plaintiffs of their ownership interest in a viable company."   *Id.*, ¶ 79 (emphasis added). Defendants also did not disclose that Defendants knew the reorganization plan "would not prevent a bankruptcy filing because of its failure to eliminate any significant debt, but at the same time, would enhance [the Board's and GE's] respective equity interest in the company." *Id.*, ¶ 80.   Defendants did not disclose that the plan "released the personal guarantees of certain board members, including Wayne Davis, for debts of the company."   *Id.*, ¶ 81. Defendants did not disclose that "the plan also provided preferential treatment for its shareholder and creditor, GE, which was able to secure its position by negotiating preferred stock with anti-dilution provisions using monies supplied by others before Transit ultimately filed for Chapter 11 bankruptcy protection."   *Id.*, ¶ 82.   Defendants did not disclose that "by adopting the plan, *the equity interest of the remaining shareholders would be completely eroded* through the bankruptcy reorganization, while the interests of the Board of Directors and GE would be preserved, if not enhanced by the plan and the resulting bankruptcy reorganization." *Id.*, ¶ 83 (emphasis added).

"Defendants intentionally made false representations and omissions of material facts to Plaintiffs regarding the afore-referenced reorganization plan proposed by GE and adopted

10

by Transit, including but not limited to the implicit and/or expressed misrepresentation that *the plan was in the best interests of the shareholders*. These false representations and omissions of material facts were made over time during the first quarter of 2001." *Id.*, ¶ 84 (emphasis added). Defendants' representations were false; Defendants knew their representations were false or they were made recklessly. *Id.*, ¶¶ 85-86. "Defendants intended that Transit's shareholders, and Plaintiffs in particular, rely on the misrepresentations" and Plaintiffs did rely on them. *Id.*, ¶¶ 87-88. "As a proximate result of the actions of these Defendants, Plaintiffs suffered a complete loss of their equity in Transit and were deprived of the opportunity to maintain their ownership positions in a viable company." *Id.*, ¶ 89.

A careful reading of Plaintiffs' fraud count shows that in Paragraph 78, Plaintiffs make reference to the expenses incurred in devising a restructuring plan. However, the remaining twelve paragraphs of the fraud count do not mention this injury or this damage at all. Rather, as outlined above, the gravamen of the remaining paragraphs is that GE and Transit conspired to select GE's restructuring plan even though both GE and Transit knew it would be to the detriment of the shareholders and the benefit only of GE and Transit. This theory of misrepresentation, however, had the same effect on all shareholders and did not impact Plaintiffs – as authors of a competing plan – in any manner different than the rest of the shareholders. In Paragraph 87, Plaintiffs contend that Defendants intended that Plaintiffs "in particular" rely on these misrepresentations, but Plaintiffs do not provide any factual basis for

11

the manner in which Plaintiffs were to rely "in particular."   Because Plaintiffs' fraud count alleges that Defendants hid the fact that GE's restructuring plan would benefit only GE and Transit and not the shareholders, the court finds that it is derivative and is barred for the same reasons as the court discussed above.

Even were the court to focus on the only aspect of this scenario unique to Plaintiffs – that they expended time and effort devising a restructuring plan – Count III still fails.   With respect to their own efforts, Plaintiffs contend only that in connection with an invitation from Transit to submit a restructuring plan for consideration, "Defendants made certain promises and untrue statements to Plaintiffs . . . including the promise that Plaintiffs would lead the restructuring effort."   *See* Amended Cmplt., ¶ 78.   Plaintiffs do not describe in their complaint who made such statements, when they were made, or the content of the statements. Such bare allegations are not sufficient to comply with Rule 9(b) governing the specificity of fraud allegations.   *See* Fed. R. Civ. P. 9(b) ("the circumstances constituting fraud or mistake shall be stated with particularity"); *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (holding that Rule 9(b) satisfied if "complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making it, . . . (3) the content of such statements and the manner in which they misled plaintiffs, and (4) what defendants obtained as a consequence of the fraud").

Further, while Plaintiffs do allege that the representations made by Defendants were "false," they do not allege that they were false at the time Defendants issued the invitation to Plaintiffs to submit a restructuring plan.   Rather, Plaintiffs only state that their restructuring plan was presented to "the Board of Directors; however, the Board of Directors never had any intention of accepting this plan."   *Id.*   Plaintiffs do not allege that the Board issued the invitation to Plaintiffs to submit a restructuring plan never intending to accept it.   The lack of factual detail in the complaint allows for an interpretation only that "at some point" the Board did not intend to accept Plaintiffs' plan.

Moreover, Plaintiffs have failed to allege any facts to demonstrate that the "false invitation" was the proximate cause of their damages or injury.   As explained above, Plaintiffs do not allege damages related to their time and effort in designing a plan; rather, Plaintiffs claim that "false promises" led them to hold on to their stock.   However, there is no causation because Plaintiffs knew as of April 19, 2001, that their plan had been rejected.   Thus, the alleged inducement to remain as shareholders because they would be involved in the restructuring had ended by that date and could not have compelled them to retain their shares for the next eight months until Transit declared bankruptcy in December 2001.

Thus, the court concludes that the thrust of Plaintiffs' fraud count is derivative in nature because it relates to the effect the GE plan had on the shareholders as a whole.   The only allegations Plaintiffs make that are unique to them surround the circumstances of Defendants' invitation to Plaintiffs to submit a restructuring bid.   However, even if the court

13

were to conclude that this allegation were "direct" and not derivative, it fails because Plaintiffs have not alleged it with the particularity required by Rule 9(b) and because Plaintiffs have not connected any proximate causation to their alleged injury – the loss of equity ownership in Transit.    In any event, even were Plaintiffs able to bring their fraud count as a direct action, for the reasons stated by the court below, Plaintiffs released that claim during the bankruptcy proceedings.

### B.    Claims Precluded by Bankruptcy

Alternatively, the court also finds that even if Plaintiffs had standing to raise their derivative claims (or even if Count III was a direct claim), those claims against both GE and Transit are precluded by features of the bankruptcy action.

#### 1.    GE

As part of the Bankruptcy Court's confirmation of Transit's reorganization plan, Transit released GE from any and all claims which Transit may have had against GE.    *See* Confirmatory Release, dated December 10, 2002, ¶ 1; *see also In re Transit Group, Inc.*, 286 B.R. 811, 817-18 (M.D. Fla. 2002) (noting that release given to GE was fair and necessary in light of its extraordinary efforts).    In response to GE's argument that the release approved by the Bankruptcy Court bars Plaintiffs' claims against GE, Plaintiffs state only that it "is well settled under Florida law that a party may not exonerate himself of an intentional tort via contract."    Response, at 11.    The case law cited by Plaintiffs for this proposition, however, cannot bear its weight.    Those cases relate to contracts that attempt to release liability for

14

future intentional torts.  *See Zuckerman-Vernor Corp. v. Rosen*, 361 So. 2d 804 (Fla. Dist. Ct. App. 1978); *Fuentes v. Owen*, 310 So. 2d 458 (Fla. Dist. Ct. App. 1975).  As GE points out, were Plaintiffs' maxim accurate, no parties would be able to settle any claim for an intentional tort.  Thus, it is clear to the court that the release approved by the Bankruptcy Court precludes Plaintiffs' claims against GE.  As is evidenced by its order, the Bankruptcy Court gave serious consideration to the idea of the release before approving it.  This court cannot review that decision.[5]

---

[5]The court finds that Plaintiffs' derivative claims against GE should be dismissed because they are not shareholders and because Transit released such claims.  As such, the court need not address GE's argument that Plaintiffs' breach of fiduciary duty claims also fail because Plaintiffs cannot establish proximate cause for damages.

15

2.      Transit

Transit's reorganization plan defined the equity holders as "Class 14 Interests" which includes "all of the authorized and issued shares of [Transit] Common Stock and all claims related thereto including the subordinated claims of Hantz and any other similarly situated Claims subject to subordination under Bankruptcy Code § 510(b)." *See* Plan of Reorganization, at 45.   The claims of the Class 14 Interests were extinguished when the Bankruptcy Court entered its Confirmation Order.   Thus, the court finds that any claims that Plaintiffs may have had against Transit have been extinguished.

The reorganization plan also established a Creditors Trust to make payments to unsecured creditors.   The Trust is funded by the prosecution of certain "Avoidance Actions" and "Specified Causes of Action," which are defined broadly and include any of the estate of Transit's claims against Charles Bates, Philip Belyew, and T. Wayne Davis.   Thus, the court finds that to the extent that any such claims still exist, they have been transferred to the Creditors Trust.

Plaintiffs contend, however, that any claims they have against GE are excepted from the reorganization plan's transfer to the Transit Creditor's Trust.      This argument misapprehends the basis upon which Transit asserts that claims against it are the property of the Transit Creditors Trust.   Plaintiffs are correct that claims against *GE* were released and, therefore, did not transfer to the Creditors Trust.   (The court discussed above that the release

16

precludes Plaintiffs' claims against GE.)   However, claims against **Transit** were not released and thus are not excepted from those claims transferred to the Creditors Trust.   Rather, the claims against Transit either were (1) extinguished when the Bankruptcy Court entered its Confirmation Order, or (2) were transferred to the Creditors Trust.   On this basis also, the court GRANTS Defendants' motions to dismiss.[6]

**C.      Attorney's Fees**

Because the court grants Defendants' motions to dismiss the substantive counts of Plaintiffs' complaint, the court also dismisses Plaintiffs' claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 and § 14-2-746(1).

In its motion to dismiss, the GE Defendants seek attorney's fees pursuant to O.C.G.A. § 14-2-746(2).   The court DIRECTS the GE Defendants – and the Transit Defendants, should they desire – to file a motion for attorney's fees within twenty (20) days from the date of this order.   The motion should address both (1) Defendants' reasons for their belief they are entitled to fees and (2) the appropriate amount of fees.   The court expects that the second part of that motion should comply with the instructions set forth in *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988), and *ACLU v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999).

---

[6]Because the court finds that Plaintiffs claims against GE were released and their claims against Transit were extinguished or transferred to the Creditors Trust, the court need not address Defendants' argument that Plaintiffs' claims are also barred by an injunction entered by the Bankruptcy Court or fail to satisfy the procedural prerequisite of demand upon the corporation.

AO 72A
(Rev.8/82)

Briefing on that motion should be conducted in the manner specified in the court's Local Rule 7.

**III.   Conclusion**

The court DENIES AS MOOT Defendants' motion to dismiss [7-1]; DENIES AS MOOT Defendants' motion to dismiss [8-1]; GRANTS Defendants' motion to dismiss the amended complaint [16-1]; GRANTS Defendants' first motion to dismiss the amended complaint [17-1]; and DENIES Plaintiffs' motion for oral argument [21-1].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiffs' complaint.

Defendants are DIRECTED to submit a motion for attorney's fees within twenty (20) days from the date of this order.

**IT IS SO ORDERED** this 23rd day of March 2005.

_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

18