IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN R. HANTZ, et al., | : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION NO. |
| | : 1:05-CV-1012-JOF |
| PHILLIP BELYEW, et al., | : |
| Defendants. | : |

**OPINION AND ORDER**

This matter is before the court on Defendants Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, and Priority America, Inc.'s motion for attorney's fees [26-1]; Defendants General Electric Co. and General Electric Capital Corp.'s motion for attorney's fees [27-1]; Defendants General Electric Co. and General Electric Capital Corp.'s motion to supplement their motion for attorney's fees [37-1]; and Defendants Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, and Priority America, Inc.'s supplemental motion for attorney's fees [38-1].

**I.      Background**

    **A.      Procedural History**

Plaintiffs, John R. Hantz, Michael Reid, Michael Lacombe, and Mark Drouillard, filed suit against Defendants, Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, General Electric Company, General Electric Capital Corporation, and Transit Group, Inc., on April 18, 2005, alleging derivative actions for breach of fiduciary duty, and conspiracy to breach fiduciary duty, as well as a direct action for fraud. Defendants, Philip Belyew, T. Wayne David, Derek Dewan, and Ford Pearson, were on Transit's Board of Directors during the relevant time period. Plaintiffs were former shareholders of Transit who formed a financing group known as the Hantz Group. When Transit sought additional capital, the Hantz Group offered a financing plan. However, the Board of Directors of Transit eventually chose to use a plan offered by General Electric. The plan ultimately was not successful and Transit entered bankruptcy. Plaintiffs filed suit contending that the Board of Directors of Transit and the General Electric Defendants acted in concert to select the General Electric plan to the financial benefit of General Electric and the detriment of Transit's shareholders.

In their motions to dismiss, Defendants argued that Plaintiffs' claims failed because (1) they are not shareholders of Transit, (2) Transit gave GE a complete release of all bankruptcy and corporate claims with the approval of the bankruptcy court, (3) Plaintiffs could not show the actions of any Defendants were the proximate cause of damages, (4) Plaintiffs' "direct" fraud claim was actually derivative because Plaintiffs did not suffer any special injury,

(5) Plaintiffs did not plead fraud with particularity, (6) Plaintiffs' alleged derivative claims had been transferred to Transit's bankruptcy estate, (7) Plaintiffs did not make a pre-suit demand on Transit, (8) Plaintiffs' claims were extinguished by the bankruptcy court, and (9) Plaintiffs were divested of their fraud-based claims.

In an order dated March 23, 2006, the court granted Defendants' motions to dismiss. The court first found that Plaintiffs could not bring a shareholder derivative suit unless they were shareholders at the time the suit was filed. The court rejected Plaintiffs' argument that they fell within an exception to this rule. The cases cited by Plaintiffs to support this exception were exclusively shareholders who had lost their rights in a merger, the propriety of which they wished to challenge in the derivative action. Such a situation was not analogous to Plaintiffs, who retained their shares after their financing plan had been rejected but lost their shares eight months later in bankruptcy, an adversarial proceeding where they could challenge Transit's reorganization plan.

The court also found that Plaintiffs' fraud claim was not a direct claim because it only briefly addressed the costs the Hantz Group had incurred in presenting a financing plan. The gravamen of the fraud claim alleged detriment to Transit's shareholders and not the Hantz Group specially. Even if the court assumed the fraud claim were direct, Plaintiffs had not (1) pled it with the particularity required under Rule 9(b), (2) alleged how the claims were "false," and (3) alleged proximate cause of damages.

3

Alternatively, the court found that Plaintiffs' claims had been extinguished in the bankruptcy proceedings both through release of the General Electric Defendants and transfer of claims to Transit's bankruptcy estate. The court rejected Plaintiffs' argument that Florida law limited the extent to which a party could exonerate himself of an intentional tort through contract. The cases cited by Plaintiffs related to attempts to release liability for *future* intentional torts, not the settlement and release of past intentional torts. In an opinion dated September 11, 2006, the United States Court of Appeals for the Eleventh Circuit affirmed the court's order of dismissal.

Having disposed of Plaintiffs' claims on these numerous fronts, the court did not address the many other arguments raised by Defendants on their motions to dismiss. The court concluded by granting Defendants leave to file a motion for attorney's fees pursuant to O.C.G.A. § 14-2-746(2). The court notes that unlike O.C.G.A. § 13-6-11, which specifically states that a "jury" may authorize "expenses of litigation," O.C.G.A. § 14-2-746(2) states that the "court may" award to defendant its reasonable expenses. *See also Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1577 (11th Cir. 1990) (holding that in diversity action state law controls the availability of attorney's fees and the standards to determine when attorney's fees should be imposed, but federal law governs the right to a jury trial and Eleventh Circuit has held there is no constitutional right to have a jury decide whether to award attorney's fees).

**B.     Contentions**

4

Defendants, Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, and Priority America, Inc., seek $47,738.50 in attorney's fees and expenses for (1) $2,129 in Westlaw charges, (2) $12.48 in PACER charges, (3) $528.85 for photocopying, and (4) $23.08 for Federal Express mailing. The Priority America Defendants also filed a supplemental motion for work done between March 2006 and May 2006 in the amount of $9,216.00, for a combined total of $59,658.09 in fees and expenses.

Defendants General Electric Co. and General Electric Capital Corp. seek $58,024.74 in attorney's fees and $265.79 in expenses. In their motion to supplement, the General Electric Defendants seek an additional $20,563.50 in legal fees and $144.03 in expenses billed from March 2006 through May 2006 for a combined total of $78,732.27.

Plaintiffs argue that the court should not impose attorney's fees because they did not pursue their claims in bad faith or with an improper motive. Plaintiffs also aver there was a reasonable basis for their claims because (1) the issue of standing was a matter of first impression in the Eleventh Circuit, and there was persuasive authority from other jurisdictions that Plaintiffs had standing, (2) Florida law limits the extent to which a party may seek release of an intentional tort via contract, and (3) the court's resolution of the fraud issue amounted to hairsplitting for which Plaintiffs should not be punished through fees or costs. Plaintiffs also aver that one of the Defendants encouraged them to pursue the lawsuit. With respect to the amount of fees sought, Plaintiffs contend that Defendants did not parse out "unsuccessful"

5

defenses. Plaintiffs also ask the court for a full hearing on attorney's fees sought by Defendants.

## II.    Discussion

### A.    Propriety of Fee Award

As an initial matter, Plaintiffs are incorrect in their assertion that Defendants must show Plaintiffs pursued their claims in bad faith or with an improper motive in order to receive fees under § 14-2-746. Pursuant to O.C.G.A. § 14-2-746, on "termination of the derivative proceeding the court may . . . (2) order the plaintiff to pay any defendant's reasonable expenses (including attorneys' fees) incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose." *Id.*   Thus, the court may award fees either if the complaint was brought "without reasonable cause" or "for an improper purpose."   Defendants aver that Plaintiffs' complaint had no reasonable cause, therefore, the court need not consider Plaintiffs' motive in bringing the complaint. *Cf. Rothenberg v. Security Management Co.*, 736 F.2d 1470 (11th Cir. 1984) (which addressed the propriety of the district court's award of fees based upon "bad faith" and not upon the predecessor to O.C.G.A. § 14-2-746).

With respect to Plaintiffs' derivative claims, the court disagrees with Plaintiffs' characterization that "persuasive authority" from other jurisdictions indicated Plaintiffs had standing on an issue of first impression in the Eleventh Circuit. Rather, as the court indicated

AO 72A
(Rev.8/82)

in its March 23, 2006 order, it is clear in the Eleventh Circuit that Plaintiffs did *not* have standing to pursue a derivative action because they were not current shareholders. The cases from other jurisdictions which carved out an exception to this rule were not persuasive because they dealt with mergers, a situation clearly distinguishable from the bankruptcy proceedings here. The court finds there was no reasonable cause in Plaintiffs' assertion of derivative claims because even if the court agreed with the rulings from other jurisdictions, they could not be applied to Plaintiffs' situation here.

The court also finds there was no reasonable basis in Plaintiffs' argument that Florida law limits the extent to which parties may release intentional torts via contract. As the court explained in its prior order, the Florida cases cited by Plaintiffs clearly related to future intentional torts. Were Plaintiffs' position accepted, then no party in Florida could ever settle a claim for an intentional tort. There is no reasonable basis to assume that the law is such.

The court also disagrees with Plaintiffs' assertion that the fraud ruling was "hairsplitting" by the court for which Plaintiffs should not have to pay attorney's fees. The court rejected Plaintiffs' fraud claims on multiple bases, any one of which would have been sufficient to dispose of the claim: (1) Plaintiffs had not alleged any special damage, (2) Plaintiffs had not plead fraud with any kind of particularity, especially with respect to the manner in which the claims had been false, (3) Plaintiffs had not shown proximate cause, and (4) Plaintiffs' fraud claims had been extinguished in the bankruptcy proceedings through (a)

release of claims against General Electric, (b) extinguishment of claims in bankruptcy proceedings, or (c) transfer of claims to Transit's estate. Rather than hairsplitting, these are six independent reasons why Plaintiffs' fraud claim failed. In light of these circumstances, the court concludes there is no reasonable basis upon which Plaintiffs could have brought a fraud claim.

Plaintiffs also remark that T. Wayne Davis, one of the Defendants, apparently encouraged them to file suit. The court finds that this allegation has no relevance to whether Defendants are entitled to attorney's fees under O.C.G.A. § 14-2-746. Defendants did not file the complaint, Plaintiffs did.

Finally, the court notes that Plaintiffs' original complaint did not meet the requirements for diversity jurisdiction because it named a plaintiff and a defendant from the same state. Defendants pointed out this problem to Plaintiffs and suggested that they amend their complaint to correct the issue. Plaintiffs did not do so. Defendants, therefore, filed their first motions to dismiss addressing the jurisdictional issue, as well as the numerous substantive issues. In response, Plaintiffs did amend their complaint to correct the jurisdictional problem but took no action in the amended complaint to address the substantive issues raised by Defendants, despite the fact that they had Defendants' original motions to dismiss on the issues the court ultimately addressed. That is to say, Defendants showed all of their cards to Plaintiffs and gave them the opportunity to reassess their original complaint in that light. Armed with this knowledge, Plaintiffs, however, chose not to modify the

8

substance of their complaint. For the foregoing reasons, the court finds Defendants are entitled to attorney's fees pursuant to O.C.G.A. § 14-2-746.

### B.     Amount of Fees

The court next turns to the question of the amount of fees.[1] Plaintiffs' only argument with respect to the amount of fees is that Defendants did not parse out "unsuccessful" defenses. The court again disagrees with Plaintiffs' characterization. There were no "unsuccessful" defenses. Rather, having dismissed Plaintiffs' claims on so many alternative grounds, the court declined to further consider Defendants' arguments that Plaintiffs' breach of fiduciary duty claims also fail for lack of proximate cause and Plaintiffs' claims were barred by an injunction entered by the bankruptcy court, as well as the failure to make a demand upon the corporation. *See* Order, dated March 23, 2006, at 15 n.5 & 17 n.6. This is certainly not an indication that those defenses were "unsuccessful."

---

[1] The court recognizes that Plaintiffs seek a hearing on the amount of the attorney's fees to be awarded. Plaintiffs do not explain why a hearing is necessary. In their motions, Defendants set forth considerable evidence concerning the amount of fees, including affidavits from the attorneys doing the work and an outside attorney who reviewed the billing records, as well as itemized billing records showing the day-to-day work by time keeper with description. Finally, Defendants grouped the billing into categories. The court finds that this collection of information provide ample opportunity for Plaintiffs to specifically challenge any portion of fees requested by Defendants in Plaintiffs' response to Defendants' motions. Plaintiffs chose not to do so and the court does not find it necessary to give them another opportunity in court.

AO 72A
(Rev.8/82)

An application for attorney's fees begins with the basic principle that the court "is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id.* The court must then consider the reasonable hours expended. The court must exclude "excessive, redundant or otherwise unnecessary" hours. *Id.* at 1301 (citation and quotation omitted). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). That burden includes providing records to the court to "show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*

Defendants Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, and Priority America, Inc., provide the affidavit testimony of Nisbet S. Kendrick III of Womble, Carlyle, Sandridge, PLLC, counsel to Davis, Dewan, Pearson, and Priority America, Inc. Mr. Kendrick's affidavit testified to the billing records of the firm and the time spent on the matter by all timekeepers, 150.6 hours for a total of $47,738.50 in attorney's fees. Mr. Kendrick's affidavit also breaks down the hours spent by task and by attorney. He further testifies as to the rate charged by each timekeeper, as does the affidavit of Ms. Sharon L.

10

McBrayer, also of Womble, Carlyle, Sandridge, PLLC. Mr. Jeffrey Bramlett, an attorney with Bondurant, Mixson, and Elmore, testified via affidavit that he reviewed the hourly rates of the timekeepers for Womble Carlyle, Sandridge, PLLC, and found them to reflect commercially reasonable rates in the Atlanta legal market. Mr. Kendrick's affidavit testifies to the following expenses: (1) $2,129 in Westlaw charges, (2) $12.48 in PACER charges, (3) $528.85 for photocopying, and (4) $23.08 for Federal Express mailing.

Defendants General Electric and General Electric Capital Corporation filed a motion for attorney's fees seeking $58,024.74 in attorney's fees and $265.79 in expenses for copying, long distance, and mileage. The General Electric Defendants submitted the affidavits of Thomas J. Mew and Matthew A. Horvath of Rogers & Hardin, who represented the General Electric Defendants in the litigation. These affidavits set forth the billing rates for all timekeepers at Rogers & Hardin, as well as the amounts of time spent on particular tasks. Jeffrey Bramlett also reviewed the billing records of Rogers & Hardin and testified that he believed the rates to be a reasonable reflection of the prevailing market rate. Dan F. Laney III of Rogers & Hardin provided affidavit testimony breaking down the billing into five categories of services performed.

The court has reviewed the billing records presented by both groups of Defendants and notes further that these bills were submitted to the clients and paid for by them. The court finds that Defendants have submitted sufficient documentation of their work and have broken down the fees requested by project in the case. Plaintiffs have not submitted any information,

11

other than their bare statement that the fees are excessive, to show that the fees requested are unreasonable. Therefore, the court DIRECTS Plaintiffs to pay Defendants General Electric and General Electric Capital Corporation $58,024.74 in attorney's fees and Defendants Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, and Priority America, Inc., $47,738.50 in attorney's fees.

O.C.G.A. § 14-2-746 also authorizes that payment of reasonable expenses. In *ACLU v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999), in the context of 42 U.S.C. § 1988, the court found that where expenses are authorized by statute, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed a costs." The court will apply the same standard here. The court recognizes that it is not limited to 28 U.S.C. § 1920 in awarding expenses but finds that section 1920 provides a good basis upon which to determine which expenses are reasonable. Therefore, the court declines to award expenses for computerized research or PACER charges. As such, the court awards the Priority America Defendants $528.85 in photocopying and $23.08 for Federal Express, for a total of $551.93 in expenses. The court awards the General Electric Defendants $265.79 in expenses for copying, long distance, and mileage.

As the court mentioned above, the General Electric Defendants then filed a supplemental motion for attorney's fees for more than $20,000 for work done between March 2006 and May 2006. The majority of work done in that time frame was the motion for attorney's fees. The court does not find $20,000 to be a reasonable amount for the

12

presentation of a motion for attorney's fees. Rather, the court finds that $5,000 is sufficient to cover the time necessary to prepare a fee petition. Similarly, the Priority America Defendants seek more than $9,000 for preparation of the attorney's fee petition. The court awards $5,000.

### III.    Conclusion

The court GRANTS IN PART AND DENIES IN PART Defendants Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, Priority America, Inc.'s motion for attorney's fees [26-1]; GRANTS IN PART AND DENIES IN PART Defendants General Electric Co. and General Electric Capital Corp.'s motion for attorney's fees [27-1]; GRANTS IN PART AND DENIES IN PART Defendants General Electric Co. and General Electric Capital Corp.'s motion to supplement its motion for attorney's fees [37-1]; and GRANTS IN PART AND DENIES IN PART Defendants Phillip Belyew, T. Wayne Davis, Derek E. Dewan, Ford G. Pearson, Priority America, Inc.'s supplemental motion for attorney's fees [38-1].

In sum, the court DIRECTS Plaintiffs to pay to the Priority America Defendants $52,738.50 in attorney's fees and $551.93 in expenses for prosecuting Defendants' motion to dismiss.

The court DIRECTS Plaintiffs to pay to the General Electric Defendants $63,024.74 in attorney's fees and $265.79 in expenses.

**IT IS SO ORDERED** this 8th day of November 2006.

          <u>s/ J. Owen Forrester</u>
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE